1  **LAQUER, URBAN, CLIFFORD & HODGE LLP**
   J. Paul Moorhead, State Bar No. 240029
2  225 South Lake Avenue, Suite 200
3  Pasadena, California 91101-3030
   Telephone: (626) 449-1882
4  Facsimile: (626) 449-1958
   moorhead@luch.com
5
6  Counsel for Plaintiffs, Trustees of the Southern California
   IBEW-NECA Pension Plan, et al.
7

8  <center>**UNITED STATES DISTRICT COURT**</center>
9  <center>**CENTRAL DISTRICT OF CALIFORNIA**</center>
10

| | |
|---|---|
| TRUSTEES OF THE SOUTHERN CALIFORNIA IBEW-NECA PENSION PLAN, et al.,<br><br>        Plaintiffs,<br><br>        vs.<br><br>PC ELECTROCRAFT, INC., etc.<br><br>        Defendant. | Case No.: CV 12-04049 JAK(JEMx)<br><br>Assigned to the Honorable<br>John A. Kronstadt<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**<br><br>HEARING:<br>Date:  Monday, August 6, 2012<br>Time:  8:30 a.m.<br>Court:  255 E. Temple Street<br>         Los Angeles, CA 90012<br>         Courtroom 750 |

# TABLE OF CONTENTS

**PAGE**

1. PRELIMINARY STATEMENT ........................................................................... 1

2. UNDENIED ALLEGATIONS, EXCEPT THOSE RELATING TO THE AMOUNT OF DAMAGES ARE DEEMED TRUE ............................................ 1

3. PC ELECTROCRAFT BREACHED ITS COLLECTIVE BARGAINING AGREEMENTS, VIOLATED ERISA, AND ADMITTED THAT UNPAIDCONTRIBUTIONS ARE OWED THE TRUSTS ................................. 1

4. PC ELECTROCRAFT IS REQUIRED TO PAY THE TRUSTS LIQUIDATED DAMAGES, INTEREST, COURT COSTS, AND ATTORNEY'S FEES ................................................................................................ 2

    A. Liquidated Damages and Prejudgment Interest ........................................... 3

    B. Attorneys' Fees and Costs ............................................................................ 4

        i. Lodestar Figure ................................................................................. 6

        ii. Johnson/Kerr Factors ........................................................................ 7

    C. Court Costs ................................................................................................... 7

5. THE EITEL FACTORS WEIGH IN FAVOR OF DEFAULT JUDGMENT AGAINST PC ELECTROFRAFT AND IN FAVOR OF THE TRUSTS ..................................................................................................... 7

    A. The Trusts Will be Greatly Prejudiced Unless This Motion is Granted ........................................................................................................ 7

    B. The Trusts' Substantive Claim Would be Successful if Tried on the Merits ........................................................................................................... 8

    C. The Complaint was Pled with Specificity and the Trusts Adhered to the Service Requirements of FRCP 4 ........................................................ 9

    D. The Sum of Money at Stake in the Action .................................................. 9

    E. The Possibility of a Dispute Concerning Material Facts is Unlikely ........ 9

    F. Default was not Due to Excusable Neglect .............................................. 10

G.  The Potential Prejudice to the Trusts Warrants the Entry of Default Judgment .............................................................................................. 10

6.  CONCLUSION ........................................................................................... 11

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

Blum v. Stenson
   465 U.S. 886 (1984) .................................................................................................. 6

Central States, Southeast and Southwest Areas Pension Fund v. Alco Express Company
   522 F. Supp. 919 (E.D. Mich. 1981) ........................................................................ 5

Chalmers v. Los Angeles
   796 F.2d 1205 (9th Cir. 1985) .................................................................................. 7

Clark v. City of Los Angeles
   803 F.2d 987 (9th Cir. 1986) ................................................................................ 5, 6

Eitel v. McCool
   782 F.2d 1470 (9th Cir. 1986) .................................................................................. 7

Geddes v. United Financial Corporation
   559 F.2d 557 (9th Cir. 1977) .................................................................................... 1

Guam Soc'y for Obstetricians & Gynecologists v. Ada
   100 F.2d 691 (9th Cir. 1996) .................................................................................... 6

Harris v. Marhoefer
   24 F. 3d 16 (9th Cir. 1994) ....................................................................................... 6

Hensley v. Eckerhart
   461 U.S. 424 (1983) .............................................................................................. 5, 6

Johnson v. Ga. Highway Express, Inc.
   488 F.2d 714 (5th Cir. 1974) .................................................................................... 5

Kemmis v. McGoldrick
   706 F.2d 993 (9th Cir. 1983) ................................................................................ 4, 5

Kerr v. Screen Extras Guild, Inc.
   526 F.2d 67 (9th Cir. 1975) ...................................................................................... 6

New York State Teamsters Conference Pension & Retirement Fund by Bush v. Fratto
   Curbing Co.
   875 F. Supp. 129 (D.N.Y. 1995) .............................................................................. 4

Operating Engineers Pension Trust v. B&E Backhoe
 911 F.2d 1347 (9th Cir. 1990) .................................................................................. 5

Operating Engineers Pension Trust v. Cecil Backhoe Service, Inc.
 795 F.2d 1501 (9th Cir. 1986) .................................................................................. 3

Operating Engineers Pension Trust v. Reed
 726 F.2d 513 (9th Cir. 1984) .................................................................................... 3

Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship
 507 U.S. 380 (1993) ................................................................................................ 10

Pope v. United States
 323 U.S. 1 (1944) ...................................................................................................... 1

Seymour v. Hull & Moreland Engineering
 605 F.2d 1105 (9th Cir. 1979) .................................................................................. 6

Stutson v. United States
 516 U.S. 193 (1996) ................................................................................................ 10

U.S. for the use of Sherman v. Carter
 353 U.S. 210 (1957) .................................................................................................. 4

United Automobile Workers Local 259 v. Metro Auto Center
 501 F.3d 283 (3rd Cir. 2007) .................................................................................... 5

United O.A.B. & S.M.U. 21 v. Thorlief Larson & Son, Inc.
 519 F.2d 331 (9th Cir. 1975) .................................................................................... 4

Waggoner v. Northwest Excavating, Inc.
 642 F.2d 333 (9th Cir. 1981) .................................................................................... 2

Welch v. Metropolitan Life Ins. Co.
 480 F. 3d 942 (9th Cir. 2007) ................................................................................... 6

Widrig v. Apfel
 140 F.3d 1207 (9th Cir. 1998) .................................................................................. 6

**Statutes**

26 C.F.R. § 301.6621-1 ................................................................................................... 4

28 U.S.C. § 1923 ............................................................................................................. 7

29 U.S.C. § 1132(g) ........................................................................................................ 3

29 U.S.C. § 1132(g)(2) .................................................................................... 3, 4, 11

29 U.S.C. § 1132(g)(2)(C) ...................................................................................... 3

**Other Authorities**

IRS Rev. Rul. 2012-16............................................................................................ 4

**Rules**

Fed. R. Civ. Proc. 4................................................................................................ 9

Fed. R. Civ. Proc. 55(b) ......................................................................................... 1

Fed. R. Civ. Proc. 8(d) ........................................................................................... 1

v

567568.DOC

Memorandum of Points & Authorities

1. **PRELIMINARY STATEMENT.**

Plaintiffs are trustees of collectively bargained fringe benefit trusts. This action was brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") to collect unpaid fringe benefit contributions and related damages owed by the defendant to the plaintiffs pursuant to several collective bargaining agreements. Based on the defendant's admissions, the plaintiffs are entitled to judgment for the principal amount of $412,819.73, plus attorneys' fees of $15,660.00 and costs of $409.00.

2. **UNDENIED ALLEGATIONS, EXCEPT THOSE RELATING TO THE AMOUNT OF DAMAGES ARE DEEMED TRUE.**

Averments in a pleading to which a responsive pleading is required (e.g., complaint, etc.), other than those as to the amount of damages, are admitted when not denied in the responsive pleading. Fed. R. Civ. Proc. 8(d). In the default judgment context, all allegations in the complaint, except those relating to the amount of damages, are taken as true. Geddes v. United Financial Corporation, 559 F.2d 557, 560 (9th Cir. 1977); Pope v. United States, 323 U.S. 1, 12 (1944). The Court is expressly authorized to conduct a hearing on the issue of damages before entering a judgment by default. Fed. R. Civ. Proc. 55(b). In the default judgment context, the sole issue before the Court is the amount of damages. Id.

3. **PC ELECTROCRAFT BREACHED ITS COLLECTIVE BARGAINING AGREEMENTS, VIOLATED ERISA, AND ADMITTED THAT UNPAIDCONTRIBUTIONS ARE OWED THE TRUSTS.**

PC Electrocraft is bound to the terms and provisions of several Project Labor Agreements and the Inside Wiremen's Agreement (collectively the "Master Agreements"). Complaint ¶¶ 7-13; Declaration of Richard Reed in Support of Motion for Default Judgment ("Decl. Reed"), filed herewith, at ¶¶ 4-6. The Master Agreements required PC Electrocraft to pay to the Trusts fringe benefit contributions for all hours worked by, and wages paid to employees of PC Electrocraft on certain projects (the

"Projects") covered by the Master Agreements. Complaint ¶ 18; Decl. Reed ¶ 7. Based on PC Electrocraft's own payroll records, fringe benefit contributions of $950,646.55 were due the Trusts based on work performed by PC Electrocraft's employees on the Projects from November 2011 through May 2012. *See* Declaration of Kathleen Johnson in Support of Motion for Default Judgment ("Decl. Johnson"), filed herewith, at ¶ 9. Despite owing these contributions, PC Electrocraft did not voluntarily submit any payments to the Trusts. Instead, the Trusts were forced to seek collection of the contributions from PC Electrocraft's general contractors. *See* Decl. Johnson ¶ 9; Declaration of J. Paul Moorhead in Support of Motion for Default Judgment ("Decl. Moorhead"), filed herewith, at ¶ 5. While the Trusts, at their own costs, have successfully collected $569,473.25 from the general contractors, the balance of $381,173.29 in fringe benefit contributions remains due. *See* Decl. Johnson ¶ 9.

**4.    PC ELECTROCRAFT IS REQUIRED TO PAY THE TRUSTS LIQUIDATED DAMAGES, INTEREST, COURT COSTS, AND ATTORNEY'S FEES.**

The Inside Wiremen's Agreement requires delinquent employers to pay liquidated damages, prejudgment interest, legal fees and court costs. *See* Complaint ¶¶ 22-25; Decl. Reed Ex. A at § 7.52; Decl. Johnson ¶ 10. The Ninth Circuit has held these clauses to be fully enforceable. "[T]he federal labor policy of enforcing the parties' intent as expressed in their negotiated agreement is paramount." Waggoner v. Northwest Excavating, Inc., 642 F.2d 333, 339 (9th Cir. 1981), reaff'd on remand, 685 F.2d 1224 (9th Cir. 1982). Other federal courts, in recognition of the administrative costs involved in processing and pursuing delinquencies, have also upheld and enforced liquidated damages provisions where, as here, the amount of liquidated damages is reasonable. This Court should enforce the terms of the Inside Wiremen's Agreement as it was negotiated and agreed to by the parties, and grant the Trusts their contract remedies of liquidated damages, interest, attorneys' fees and costs.

///

Furthermore, section 502 of ERISA, 29 U.S.C. § 1132(g) was amended in 1980 to require the payment of interest, liquidated damages and attorney fees to the Trusts in addition to unpaid contributions. Section 502(g)(2) [29 U.S.C. § 1132(g)(2)] states:

> "In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan:
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
> > (i) interest on the unpaid contributions, or
> >
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20% (or such higher percentages as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> E) such other legal and equitable relief as the court deems appropriate.

In <u>Operating Engineers Pension Trust v. Reed</u>, 726 F.2d 513, 514-15 (9th Cir. 1984) and <u>Operating Engineers Pension Trust v. Cecil Backhoe Service, Inc.</u>, 795 F.2d 1501, 1508 (9th Cir. 1986), the Ninth Circuit has held that the damages specified in section 502(g)(2), including attorney's fees, are mandatory when a trust fund obtains a judgment for unpaid contributions.

### A.   Liquidated Damages and Prejudgment Interest.

Section 502 requires an award of liquidated damages in an amount equal to the amount of prejudgment interest or the amount provided for in the collective bargaining agreement not to exceed 20%, whichever is greater. 29 U.S.C. § 1132(g)(2)(C). Various federal courts, in recognition of the administrative costs involved in processing and pursuing delinquencies, have upheld and enforced liquidated damages provisions where,

as here, the amount of liquidated damages is reasonable. <u>U.S. for the use of Sherman v. Carter</u>, 353 U.S. 210 (1957); <u>United O.A.B. & S.M.U. 21 v. Thorlief Larson & Son, Inc.</u>, 519 F.2d 331, 337 (9th Cir. 1975).

The Inside Wiremen's Agreement provides that liquidated damages are calculated "in the amount of 1½% of the principal [contributions] if late 1-30 days; 3% of the principal if late 31-60 days; 1½% will accrue for each additional thirty day late, up to a maximum of 18%." Decl. Reed Ex. A at § 7.52. Pursuant to the Inside Wiremen's Agreement and 29 U.S.C. § 1132(g)(2), the Trusts seek liquidated damages of $27,840.34 from PC Electrocraft, based on untimely or unpaid contributions during the period of November 2011 through May 2012. Decl. Johnson ¶ 10(a), Ex. A.

Based on PC Electrocraft's failure to timely submit fringe benefit contributions during the period of November 2011 through May 2012, pre-judgment interest in the amount of $3,806.10 has accrued. Decl. Johnson ¶ 10(b), Ex. A. Interest was calculated at the rate specified in 29 U.S.C. § 1132(g)(2), which references 26 U.S.C. § 6621 for the applicable interest rate. 26 C.F.R. § 301.6621-1 states that the adjusted interest rate established under section 6621 shall be published by the Commissioner in a Revenue Ruling. In calculating interest, the Trusts used the rates provided in IRS Rev. Rul. 2012-16. Decl. Johnson ¶ 10(b).

### B. Attorneys' Fees and Costs.

The Trusts request an attorneys' fees award in the amount of $15,660.00. Decl. Moorhead ¶ 2. 29 U.S.C. § 1132(g)(2) makes an award of attorneys' fees mandatory when trust funds prevail in actions to enforce and collect benefit fund contributions. <u>Kemmis v. McGoldrick</u>, 706 F.2d 993, 997 (9th Cir. 1983). ERISA is designed to ensure that benefit funds "not only are reimbursed for delinquent contributions but also that they will receive 'significant extra funding at the delinquent employer's expense.' [citations] ERISA accordingly permits the recovery of … costs and attorney's fees." <u>New York State Teamsters Conference Pension & Retirement Fund by Bush v. Fratto Curbing Co.</u>, 875 F. Supp. 129, 131 (D.N.Y. 1995).

The intent of Congress in imposing a mandatory fees award was "to promote the prompt payment of contributions and assist plans in recovering the costs incurred in connection with delinquencies." Central States, Southeast and Southwest Areas Pension Fund v. Alco Express Company, 522 F. Supp. 919, 927 (E.D. Mich. 1981) [quoting the House Committee on Education and Labor Report, H.R. Rep. No. 869, 96th Cong., 2d Sess. (1980)]. Accordingly, reasonable attorney's fees should not be determined based on a proportionality or "de minimis" standard (i.e. Local Rule 55-3). Operating Engineers Pension Trust v. B&E Backhoe, 911 F.2d 1347, 1355 (9th Cir. 1990); United Automobile Workers Local 259 v. Metro Auto Center, 501 F.3d 283, 294 (3rd Cir. 2007).

Rather, the Court should consider the reasonableness of an attorney's fees award using the "hybrid lodestar/multiplier approach." Kemmis, *supra*, 706 F.2d at 997-998, McElwaine v. US West, Inc., 176 F.3d 1167, 1173 (9th Cir. 1999). Under this approach, the court must first determine the "lodestar figure," which is calculated by multiplying "the number of hours reasonably expended on the litigation … by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

Next, the Court looks to the Johnson/Kerr factors traditionally used to assess the reasonableness of attorneys' fees to determine whether to increase or reduce the presumptively reasonable lodestar fee. Clark v. City of Los Angeles, 803 F.2d 987, 991 (9th Cir. 1986). These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill requisite to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974); Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70

(9th Cir. 1975); *see also* <u>Seymour v. Hull & Moreland Engineering</u>, 605 F.2d 1105 (9th Cir. 1979).

Increases or decreases to the lodestar fee are only warranted in rare or exceptional cases. <u>Blum v. Stenson</u>, 465 U.S. 886, 898-901 (1984); <u>Harris v. Marhoefer</u>, 24 F. 3d 16, 18 (9th Cir. 1994); <u>Clark</u>, *supra*, 803 F.2d at 990-991.

### i. Lodestar Figure.

The lodestar figure is calculated by multiplying "the number of hours reasonably expended on the litigation … by a reasonable hourly rate." <u>Hensley</u>, *supra*, 461 U.S. at 433. Declarations regarding the prevailing market rate in the relevant community suffice to establish a reasonable hourly rate. <u>Widrig v. Apfel</u>, 140 F.3d 1207, 1209 (9th Cir. 1998); <u>Guam Soc'y for Obstetricians & Gynecologists v. Ada</u>, 100 F.2d 691, 696 (9th Cir. 1996). A plaintiff must submit "satisfactory evidence … that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Blum</u>, *supra*, 465 U.S. at 895-896.

The hourly rates charged to the Trusts by Laquer, Urban, Clifford & Hodge LLP ($220.00 to $280.00 for attorneys and $95.00 for paralegals) are reasonably within the range of fees charged by law firms to multi-employer, Taft-Hartley Trust Funds in Southern California. Declaration of Douglas Waite in Support of Motion for Default Judgment, filed herewith. The Ninth Circuit recently addressed the rates charged by ERISA plaintiffs' attorneys. The court observed that fees of "$375 to $400 per hour [are] in line with the prevailing market rate." <u>Welch v. Metropolitan Life Ins. Co.</u>, 480 F. 3d 942, 947 (9th Cir. 2007). The Ninth Circuit reversed the court's reduction of an attorney's rate of $250 per hour for purposed of awarding fees; noting that the evidence showed it was "well below the prevailing market rate for ERISA plaintiffs' lawyers of comparable skill." <u>Id</u>. Here, the maximum rate charged to the Trust was $280 per hour for partner time. Based on this Ninth Circuit decision, the rates charged to the Trusts are reasonable and compare favorably to the prevailing market rates.

1  In determining reasonable hours, the party requesting fees bears the burden of submitting detailed time records justifying the hours claimed to have been expended. Chalmers v. Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1985). From November 2011 through the date of the filing of this motion, attorneys and paralegals from Laquer, Urban, Clifford & Hodge LLP spent 74.7 hours on this case. *See* Decl. Moorhead, ¶ 2 Ex. A. The hours seen in the time records are justified considering the circumstances of this case. *See* Decl. Moorhead ¶ 5. This legal work should be included in the Court's award of attorneys' fees.

### ii. Johnson/Kerr Factors.

*See* Decl. Moorhead, ¶ 4 [discussing these factors].

### C. Court Costs.

Pursuant to the Inside Wiremen's Agreement and 28 U.S.C. § 1923 the Trusts are entitled to their costs of suit, totaling $409.00. Decl. Moorhead, ¶ 6.

## 5. THE EITEL FACTORS WEIGH IN FAVOR OF DEFAULT JUDGMENT AGAINST PC ELECTROFRAFT AND IN FAVOR OF THE TRUSTS.

Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986) lists the factors which may be considered by courts in ruling on a motion for default judgment. These factors include: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Id. at 1471-1472.

### A. The Trusts Will be Greatly Prejudiced Unless This Motion is Granted.

The Trusts would suffer great prejudice if the within motion for default judgment is not granted. If the motion is denied, the Trusts will have expended hours of effort and thousands of dollars in pursuit of their claim, for no purpose. The Trusts will have no other way to obtain a full and enforceable form of relief against PC Electrocraft, as only a judgment will allow the Trusts to secure the fringe benefit contributions and other

7

amounts via execution.

<u>Expense of pursuing the claim</u>. The Trusts have spent substantial time and effort in itemizing, proving and collecting their claim against PC Electrocraft. The Trusts also spent considerable resources preparing the complaint and drafting this Motion.

<u>No other form of obtaining relief</u>. A default judgment is the final form of relief available to the Trusts in this action. Prior to filing the complaint, the Trusts attempted to informally obtain PC Electrocraft's compliance with the Master Agreements. PC Electrocraft failed to pay all amounts owed, and the Trusts were therefore required to file suit to enforce their rights. Based on past experiences and discussions with PC Electrocraft, it is unlikely the Trusts will obtain the amounts owed without the judgment sought herein. The Trusts need an executable judgment in order to secure the relief that they are entitled to. The only way to secure this judgment is via the underlying motion for default judgment.

**B.   The Trusts' Substantive Claim Would be Successful if Tried on the Merits.**

The Trusts' rights and PC Electrocraft's obligations are established by contract. The basic facts are straight forward: PC Electrocraft is obligated, under the Master Agreements, to pay the Trusts fringe benefit contributions at defined rates. The contributions sought are based on PC Electrocraft's own payroll records. The Master Agreements and ERISA provide mandatory damages. The amounts owed by PC Electrocraft are verifiable and indisputable.

If PC Electrocraft was to be relieved from default, and if it alleged that the amounts itemized in this motion are not owed, its argument would fail as it would be unable to support its claim either with facts (again, the Trusts' claim is based upon PC Electrocraft's own records) or law (voluminous case law supports the Trusts' motion). Indeed, the Trusts have been successful in many similar motions.

///

///

8

567568.DOC

### C. The Complaint was Pled with Specificity and the Trusts Adhered to the Service Requirements of FRCP 4.

The complaint sets forth causes of action for PC Electrocraft's breach of the Master Agreements with the requisite specificity. The Trusts specify the parties, the agreements to which PC Electrocraft is bound, and the applicable federal law governing the issues. The complaint also indicates that fringe benefit contributions, liquidated damages, interest, and attorney's fees and costs would be established by proof. The declarations filed in support of this motion set forth evidentiary support for all of the amounts claimed by the Trusts.

The Federal Rules of Civil Procedure required the Trusts to personally serve the Summons and Complaint on PC Electrocraft. Fed. R. Civ. Proc. 4. The Trusts complied with this requirement. Decl. Moorhead ¶ 7.

### D. The Sum of Money at Stake in the Action.

By way of this motion, the Trusts seek a total of $412,819.73. This amount is broken down as follows: $381,173.29 in contributions, $27,840.34 in liquidated damages, and $3,806.10 in prejudgment interest based on work performed by PC Electrocraft's employees during the months of November 2011 through May 2012; plus $15,660.00 in attorneys' fees and $409.00 in court costs. Decl. Johnson ¶¶ 9-10; Decl. Moorhead, ¶¶ 2, 6. The Trusts also seek post-judgment interest at the statutory rate.

### E. The Possibility of a Dispute Concerning Material Facts is Unlikely.

The material facts in the instant matter are (1) that PC Electrocraft is bound to Master Agreements which require the payment of fringe benefit contributions; (2) that PC Electrocraft's employees performed a significant amount of work for which PC Electrocraft did not timely submit the mandatory contributions; and (3) that PC Electrocraft now owes substantial contributions, liquidated damages, interest and attorneys' fees. The delinquency has not been satisfied, and PC Electrocraft would not be able to provide evidence to the contrary.

///

### F. Default was not Due to Excusable Neglect.

The determination of whether neglect is excusable is an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include the danger of prejudice to the debtor, the length of the delay in requesting relief from default and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the defaulting party, and whether the defaulting party acted in good faith. Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship, 507 U.S. 380 (1993); Stutson v. United States, 516 U.S. 193 (1996).

None of the Pioneer Inv. elements weigh in PC Electrocraft's favor. The default does not prejudice PC Electrocraft, especially when considering that the verifiability of the claim makes it such that the Trusts would prevail at trial and/or through a dispositive motion in the non-default context, such as a motion for summary judgment.

Furthermore, PC Electrocraft has not attempted to cure its default. Decl. Moorhead ¶ 7. PC Electrocraft has been well aware of the ongoing prosecution of this matter. PC Electrocraft had the opportunity to request that default be set aside, yet failed to do so. PC Electrocraft cannot in good faith claim that its failure to respond to the complaint was due to excusable neglect. PC Electrocraft's default was entered pursuant to its disinterest in responding to the Complaint, not its inability to do so. The entry of default was valid, and the motion for default judgment is thus properly predicated. Setting aside PC Electrocraft' default at this stage of the litigation would be prejudicial to the Trusts, especially when considering the great expense that the Trusts will incur if forced to re-litigate the instant action.

### G. The Potential Prejudice to the Trusts Warrants the Entry of Default Judgment.

Though the Trusts agree that decisions should be based on the merits of the case whenever possible, there are certain instances where obtaining a decision based solely on the merits would simply be impossible. As discussed in the preceding paragraphs, this is one of those instances.

1       The Trusts contend that the Court should balance the policy favoring decisions on the merits, against the great prejudice that the Trusts would suffer if they are forced to either refile the action, to forego the $428,888.73 that they are entitled to under the controlling contracts and federal law, or to continue litigating the within matter. The Trusts should not be punished for PC Electrocraft's continual refusal to abide by the rules that govern the judicial process.

## 6. CONCLUSION.

      The Master Agreements, 29 U.S.C. § 1132(g)(2) and controlling case law all require PC Electrocraft to pay to the Trusts the amounts set forth in this motion. The Trusts respectfully request that this Court grant this motion and enter judgment in favor of the Trusts for the principal amount of $412,819.73 (consisting of $381,173.29 in contributions, $27,840.34 in liquidated damages, and $3,806.10 in prejudgment interest), plus attorney's fees of $15,660.00, costs of $409.00, and post-judgment interest as provided by law from the date of entry of the judgment herein.

Respectfully Submitted:

Dated: July 5, 2012     LAQUER, URBAN, CLIFFORD & HODGE LLP

By: */S/ - J. Paul Moorhead*
    J. Paul Moorhead, Counsel for Plaintiffs Trustees of the Southern California IBEW-NECA Pension Plan, et al.

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California. I am over the age of 18, and not a party to the within action. My business address is: 225 South Lake Avenue, Suite 200, Pasadena, California 91101-3030.

    On July 5, 2012, I served the foregoing document(s) described below:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

on the interested parties in this action by placing a true copy thereof in a sealed envelope(s) addressed to:

PC Electrocraft, Inc.                       *Defendant*
725 Battery Street
San Pedro, CA 90731

**XXX** (BY MAIL) I caused said envelope(s) with first class postage prepaid to be placed in the United States mail at Pasadena, California.

    ____ (BY E-MAIL TRANSMISSION) I caused a true and complete copy of the document described above to be transmitted by e-mail transmission to the e-mail address set forth above.

    ____ (BY PERSONAL SERVICE) I caused said envelope(s) to be delivered by hand to the office or the residence of the addressee as shown above.

    ____ (BY FACSIMILE TRANSMISSION) I caused a true and complete copy of the document described above to be transmitted by facsimile transmission to the telephone number(s) set forth opposite the name(s) of the person(s) set forth above.

    ____ (BY OVERNIGHT DELIVERY) I caused said envelope(s) with prepaid delivery charges to be placed in the UPS Box at Pasadena, California.

    Executed on July 5, 2012, at Pasadena, California.

    ____ (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**XXX** (FEDERAL) I declare that I am employed by a member of the Bar of this Court, and that this service was made under the supervision of said attorney.

Gina Marston